## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IAN STEINER, individually and on behalf of others similarly situated, | |
| Plaintiffs, | |
| vs. | No. 2:12-CV-02531 |
| RAWLINGS SPORTING GOODS COMPANY, INC., | |
| Defendants. | **CLASS ACTION** |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT

## I. INTRODUCTION

Plaintiffs submit this Memorandum in support of their Unopposed Motion Seeking Entry of an Order Preliminarily Approving the Proposed Class Action Settlement, as memorialized in the Settlement Agreement and Release (the "Settlement Agreement" or "SA"), [1] that was executed on May 14, 2013, with Defendant Rawlings Sporting Goods Company, Inc. ("Rawlings" or "Defendant").

---

[1] The capitalized terms used in this Memorandum are defined in the Settlement Agreement.

The Settlement Agreement and its exhibits are attached to the accompanying Declaration of Donald A. Beshada, Esq., as Exhibit 1.  As detailed below, the Court should preliminarily approve the Settlement Agreement because, among other things, it provides substantial benefits to Settlement Class Members, includes a comprehensive Notice Plan, and satisfies the requirements of FED. R. CIV. P. 23(e).

## II.  FACTUAL BACKGROUND

### A.    Plaintiffs' Allegations.

This class action lawsuit was originally commenced on March 26, 2012 by Plaintiff Ian Steiner; a related lawsuit was later commenced (in the Superior Court for the State of California) by Michael Goldberg (along with Steiner, collectively "Plaintiffs").  The cases involve a purported performance-enhancing bracelet and group of related products marketed by Rawlings (the "Products").  *See* First Amended Complaint ("FAC"), at ¶ 1.  Rawlings referred to the bracelet as the "Rawlings Power Balance Performance Bracelet," and to the related products as ones that were "infused with Power Balance Technology."  *Id*. at ¶¶ 1, 35. Plaintiffs allege that Rawlings falsely claimed in its advertising that the Products could enhance athletic performance, strength, balance, flexibility, and energy.  *Id*. Plaintiffs claim that those assertions are entirely false and misleading.  *Id*. at ¶¶ 5-9.

2

The bracelet is, essentially, a thick rubber band with a "hologram" insert; the related products (batting gloves, chest protectors and apparel) are regular items that simply contain the "hologram" insert. *Id*. at ¶ 5. According to Rawlings' marketing, advertising and packaging of the Products, the hologram insert provides consumers with increased strength, balance, flexibility and energy. *Id*. at ¶¶ 4, 35. Rawlings claims that the Products are "technically advanced" and that they will make ordinary consumers more like popular, elite athletes. *Id*. Rawlings described the Products on its retail websites – www.rawlingsgear.com and www.shoprawlings.com -- as follows:

> Are you looking for increased Balance, Strength and Flexibility?  If so, then the Power Balance Performance Bracelet is the perfect fit for you.  Power Balance is performance technology that is a favorite among elite athletes and individuals that strive to perform at the top of their game, no matter what it is.  Power Balance holograms are embedded with frequencies that react positively with your body's natural energy fields.  When the hologram comes in contact with your body's energy field, it allows your body to interact with the natural, beneficial frequency stored with the hologram.  This results in improved energy flow throughout your body.

And, as follows:

> Power Balance is Performance Technology.  Made by athletes for athletes, Power Balance is a favorite amongst elite competitors, weekend warriors, and everyday fitness enthusiasts.  Power Balance holograms are embedded with frequencies that react positively with your body's

3

> natural energy fields.  When the hologram comes in
> contact with your body's energy field, it allows your
> body to interact with the natural, beneficial frequency
> stored with the hologram.  This results in improved
> energy flow throughout your body.

*Id*.

Plaintiffs allege that, in reality, the Products are nothing more than ordinary goods, and that the "hologram" is nothing more a simple piece of ordinary photography film.  *Id*. at ¶¶ 5, 6.  Plaintiffs also allege that there truly is no legitimate dispute about that, as the manufacturer and supplier of the holograms (a now bankrupt company called Power Balance LLC) publically admitted – in January 2011 – that any performance enhancing advertising claims about the Products are false:

> …we stated that Power Balance wrist bands improved
> your strength, balance and flexibility.  We admit that
> there is no credible scientific evidence that supports our
> claims and therefore we engaged in misleading
> conduct….

*Id*. at ¶¶ 5, 42.

In sum, Plaintiffs allege that the facts show that Rawlings had no legitimate basis to make its health claims and, even worse, was actively aware of their falsity at the time that such claims were made to the public.  Had Plaintiffs and the other purchasers of the Products known the truth – that there was no scientific support for Rawlings' claims about the Products – they would not have purchased the Products.  *Id*. at ¶ 11.

**B.    History Of The Litigation.**

Steiner filed his initial Complaint in the Superior Court of the State of New Jersey, County of Bergen, on March 26, 2012[2].  On April 27, 2012, Rawlings removed the action to the United States District Court for the District of New Jersey.  On May 31, 2012, Steiner filed a First Amended Complaint (the "FAC"), which sought class certification of a nationwide class (applying New Jersey law) or, alternatively, certification of a single-state class for residents of New Jersey.  The FAC asserted claims for fraud, unjust enrichment, and violations of the New Jersey Consumer Fraud Act.

On July 1, 2012, Rawlings moved to dismiss the FAC in its entirety based on a number of arguments.  Plaintiff opposed that motion.  The motion remained under submission at the time this matter settled. Rawlings continues to dispute Plaintiffs' claims.

During the pendency of the motion, the Parties commenced written discovery.  Rawlings produced several thousand pages of documents related to the Products and the marketing of the Products.  Plaintiff reviewed and analyzed those marketing documents in preparation for a March 19, 2013 Court-ordered settlement conference.

---

[2]    Goldberg filed his Complaint in the Superior Court for the State of California, County of Los Angeles, on July 19, 2012.  That matter was stayed by agreement of the Parties pending the March 19, 2013 settlement conference in the Steiner action.

On March 19, 2013, the Parties appeared before the Honorable Madaline

Cox-Arleo, United States Magistrate Judge, for the settlement conference.

Through the progression of the almost all-day conference, the Parties agreed upon

the terms for an agreement to settle this case, which have since been memorialized

in the SA.[3]   After the Parties had agreed on the framework and material terms for

settlement, they began negotiating (and ultimately agreed upon) an appropriate

request for incentive awards and Plaintiffs' attorneys' fees and expenses.  On May

9, 2013, the Parties finally reached a tentative agreement, subject to Court

approval, to resolve the litigation.  All of the terms of the SA are the result of

extensive, adversarial, and arms' length negotiations between experienced counsel

for both sides.

###    C.    The Terms Of The Settlement Agreement.

As set forth in the Settlement Agreement, Plaintiffs' counsel and counsel for

Rawlings negotiated a proposed Settlement that, if approved, will provide

substantial benefits to the following Class: all persons who purchased one or more

Rawlings Power Balance Bracelets and or Rawlings Power Balance Non-Bracelet

Products in the United States from July 1, 2010 (the date the Products were released to

the public) until the date of the Preliminary Approval Order.  *See* SA at § II (33).

---

[3]  Over the course of the discovery and settlement discussions, the Parties
exchanged more than sufficient information to ensure that the terms of the SA are
fair, reasonable, and adequate.

Excluded from the Settlement Class are (a) Defendants and their predecessors, affiliates, subsidiaries, officers, directors and employees, (b) counsel for any of the settling parties in this action, and (c) any and all judges and justices assigned to hear any aspect of this action. *Id.*

The Settlement makes available valuable benefits that squarely address the issues raised in the litigation. Rawlings has, *inter* alia, agreed to cease making the advertising claims and representations that the Products can increase athletic performance (the exact issue raised by the FAC), while reimbursing consumers – from a fund of between $50,000 and $100,000 – up to the full purchase price of the bracelets and $10.00 per item for the other items, plus covering the cost of shipping and handling. *See* SA at § III (2).

Class Members who submit timely Claim Forms with agreed upon documentation will be reimbursed pursuant to the following schedule:

i.      Settlement Class Members who return an authentic Rawlings Power Balance Bracelet and submit proof of purchase for the bracelet from an authorized seller of authentic Rawlings Power Balance Products will be entitled to receive up to 100% of the retail price for the returned bracelet(s) plus shipping costs.

ii.     Settlement Class Members who return an authentic Rawlings PowerBalance Bracelet, but do not submit proof of purchase for the bracelet

from an authorized seller of authentic Rawlings Power Balance Products will be entitled to receive $16.50 per bracelet plus shipping costs.

iii.    Settlement Class Members who submit proof of purchase for an authentic Rawlings Power Balance Non-Bracelet Product from an authorized seller of authentic Rawlings Power Balance Products will be entitled to receive $10.00 per product.

*Id.*

Finally, the Defendants have agreed to pay Class Counsels' attorneys' fees and expenses in the aggregate amount of no more than $120,000. *See* SA at § VII (3). The Defendants have also agreed not to oppose (and shall pay, if approved by the Court), an application of incentive awards for Steiner and Goldberg in the amount of $1,500, each. *See* SA at § VII (4). Significantly, the Defendants' obligations to pay Class Counsel's Court-approved fees and expenses and the incentive awards to the Class Representatives shall not reduce or impact the Settlement Consideration the Class is to receive. This information will be clearly communicated to Settlement Class Members in the Class Notice.

### E.    Notification to Settlement Class Members.

The SA contains a notice and administration plan, the cost of which will be paid by the Rawlings. *See* SA at § VII (1).. It provides that the Parties will agree upon a third-party administrator (the "Administrator") – subject to Court approval

8

– to handle the notice program and claims administration process. *Id.* The Parties have chosen Dahl Administration as the Administrator.

The Administrator shall provide direct mailed Class Notice in substantially the same form as that attached as Exhibit B to the SA to all Class Members for whom mailing addresses can be obtained from the Rawlings websites that sold the Products. *See* SA at § V (1)(e). The Administrator shall also (i) publish notice in a targeted publication, Baseball America, (ii) issue a national press release through PR Newswire announcing the settlement, and (iii) create and maintain a settlement website at a url addresss to be agreed to by the Parties in advance of the Preliminary Approval Hearing. *See* SA at § V (1)(a) through (1)(d). Finally, Rawlings will include a link to the settlement website on each of its websites at issue here – rawlings.com, shoprawlings.com, and rawlingsgear.com – and on Rawlings' Facebook page, noting the settlement and providing easy access to it from its websites.  *See* SA at § V (1)(c)..

No later than five (5) days prior to the Final Approval Hearing, the Settlement Administrator and or Rawlings shall provide an affidavit to the Court attesting that notice was disseminated in a manner consistent with the terms of the Settlement Agreement (or with those otherwise required by the Court). *See* SA at § V (2). Consistent with Fed. R. Civ. P. 23(c) and (e), all Class Members will be provided with a reasonable opportunity to object to the Settlement, or to exclude

themselves from it.  *See* SA §§ VI (2) .  In exchange for this consideration, upon

the Effective Date following the entry of the Final Approval Order, the Defendants

will receive a release for any claims of Plaintiffs and Class Members (who do not

timely exclude themselves) regarding the Products, except for any claims for

personal injuries related to the Products.  *See* SA at § VIII.

### III.  ARGUMENT

Before a settlement of a class action can be finally approved, the Court must

determine "after a hearing" that it is "fair, reasonable, and adequate."  *See* FED. R.

CIV. P. 23(e)(2).  The Court must also "direct notice in a reasonable manner to all

class members who would be bound by the proposal."  *See* FED. R. CIV. P.

23(e)(1).  "The ultimate approval of a class action settlement depends on 'whether

the settlement is fair, adequate, and reasonable.'" *Mehling v. New York Life Ins.

Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007) (quoting *Walsh v. Great Atl. & Pac. Tea

Co.*, 726 F.2d 956, 965 (3d Cir. 1983)).  However, "[i]n evaluating a proposed

settlement for preliminary approval… the Court is required to determine only

whether the proposed settlement discloses grounds to doubt its fairness or other

obvious deficiencies such as unduly preferential treatment of class representatives

or segments of the class, or excessive compensation of attorneys, and whether it

appears to fall within the range of possible approval." *Id.* (citations omitted);

*accord, In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. 359, 379 (N.D.

Ohio 2001) (preliminary approval should be granted if there are no "grounds to

doubt [the settlement's] fairness or other obvious deficiencies") (quoting Fed. Jud.

Ctr., *Manual for Complex Litig.*, § 30.41, at 236-37 (3rd ed. 1995)).[4]  As one court

has aptly stated, "[t]he purpose of the preliminary approval process is to determine

whether there is any reason <u>not</u> to notify the class members of the proposed

settlement and to proceed with a fairness hearing."  *Lucas v. Kmart Corp*., 234

F.R.D. 688, 693 (D. Colo. 2006) (citations omitted; emphasis supplied);

*Gautreaux v. Pierce,* 690 F.2d 616, 621, n.3 (7th Cir. 1982) (the purpose of

preliminary approval "is to ascertain whether there is any reason to notify the class

members of the proposed settlement and to proceed with a fairness hearing").

 This approach is consistent with the principle that "[c]ompromises of

disputed claims are favored by the courts."  *Williams v. First Nat'l Bank,* 216 U.S.

582, 595 (1910); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*

148 F.3d 283, 317 (3d Cir. 1998); *Little Rock School Dist.* v. *Pulaski County*

*Special School Dist. No. 1,* 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly

---

[4] A proposed class action settlement is entitled to a presumption of fairness. As the leading commentator on class actions has noted, courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."  Newberg on Class Actions § 11:41; *see also Little Rock School Dist.,* 921 F.2d at 1391 (stating that class action settlement agreements "are presumptively valid"); *Petrovic v. Amoco Co.,* 200 F.3d 1140, 1148 (8th Cir. 1999) (holding that a "strong public policy favors agreements, and courts should approach them with a presumption in their favor").

favors settlements. Courts should hospitably receive them.... As a practical matter, a remedy that everyone agrees to is a lot more likely to succeed than one to which the defendants must be dragged kicking and screaming."); *Armstrong v. Board of Sch. Directors,* 616 F.2d 305, 313 (7th. Cir. 1980) ("In the class action context in particular, there is an overriding public interest in favor of settlement.... Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.") (citations and internal quotations omitted).

Because there are no "obvious deficiencies" in the Settlement Agreement, nor any "grounds to doubt its fairness," the standards for granting preliminary approval are readily satisfied here.  Plaintiffs respectfully submit that this Settlement is fair, adequate, and reasonable; that the requirements for final approval will be satisfied; and that Class Members will be provided with notice in a manner that satisfies the requirements of due process and FED. R. CIV. P. 23(e). Therefore, this Court is respectfully requested to enter the proposed order granting preliminary approval, which will: (i) grant preliminary approval of the proposed Settlement; (ii) certify the Settlement Class pursuant to the provisions of FED. R. CIV. P. 23; (iii) schedule a Final Approval Hearing to consider final approval, pursuant to the schedule set forth above; and (iv) direct that notice of the proposed

Settlement and hearing be provided to Class Members in a manner consistent with the agreed-upon Notice Plan in the Settlement Agreement.

## A.    The Settlement Should Be Preliminarily Approved By the Court.

Unlike at the final approval stage, "the Court, at [the preliminary approval] juncture, is not obligated to, nor could it reasonably, undertake a full and complete fairness review."  *In re Inter-Op Hip Prosthesis Liab. Litig.,* 204 F.R.D. at 379. Instead, "the Court's duty is to conduct a threshold examination the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation."  *Id.* (citing *Ohio Public Interest Campaign v. Fisher Foods, Inc*., 546 F. Supp. 1, 7 (N.D. Ohio 1982)).  In making this assessment at the preliminary approval stage, district courts within the Third Circuit typically consider factors such as: (i) whether the negotiations occurred at arm's length; (ii) whether there was sufficient discovery; and (iii) whether the proponents of the settlement are experienced in similar litigation.  *See Curiale v. Lenox Group, Inc.*, No. 07-1432, 2008 U.S. Dist. LEXIS 92851, at *26 (E.D. Pa. Nov. 14, 2008) (citations omitted).  *See also, Jones v. Commerce Bancorp, Inc*., No. 05-5600 (RBK), 2007 U.S. Dist. LEXIS 52144, at *5 (D.N.J. July 16, 2007); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (considering the complexity of case, reaction of class members, stage of proceedings, risks associated with the

litigation, ability of the defendant to withstand a greater settlement, and whether the settlement falls within the range or reasonableness).

In light of these standards, the criteria for granting preliminary approval of this complex class action lawsuit are met.  The settlement was reached as a result of extensive, arm's-length negotiations between experienced counsel, and which culminated in a settlement conference with Judge Arleo – who was able to assist the Parties in bridging the various gaps between them.  As discussed above, the parties have exchanged discovery in this case, which has confirmed that the settlement is fair and reasonable to Settlement Class members.  Moreover, counsel for Plaintiffs and Rawlings believe the Settlement is in the best interests of their respective clients.  The Settlement will also remove the uncertainties and risks to both parties from proceeding further in the litigation, including the risk that the class will not be certified.  For these reasons, preliminary approval should be granted.

**B.** **Certification of the Proposed Class for Purposes of Settlement Only is Appropriate.**

Both the Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998). As such, Plaintiffs seek the conditional certification of the Settlement Class set forth above and in the Settlement Agreement.[5]

"For the Court to certify a class, the plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b)." *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 564 (D.N.J. 2010). *Accord Marcus v. BMW of N. Am., LLC,* No. 08-5859 (KSH), 2010 U.S. Dist. LEXIS 122908, at *4 (D.N.J. Nov. 19, 2010). The four requirements of FED. R. CIV. P. 23(a) are numerosity, commonality, typicality, and adequacy. In addition, Plaintiffs seek certification of the Settlement Class pursuant to Rule 23(b)(3), which provides that certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." FED. R. CIV. P. 23(b)(3).

---

[5] The Defendants have agreed to certification of the class in this case for settlement purposes only.

As discussed below, these requirements are met for purposes of settlement in this case.

### 1.    *Numerosity Under Rule 23(a)(1).*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Generally, if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40, the numerosity requirement of Rule 23(a) has been met." *In re OSB Antitrust Litig.*, No. 06-826, 2007 U.S. Dist. LEXIS 56584, at *5 (E.D. Pa. Aug. 3, 2007); *see also, Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 405 (D.N.J. 1990) ("It is proper for the court to accept common sense assumptions in order to support a finding of numerosity."). Here, there are in excess of 50,000 Products were sold to consumers. Numerosity is therefore easily satisfied.

### 2.    *Commonality Under Rule 23(a)(2).*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "A finding of commonality does not require that all class members share identical claims, and factual differences among the claims of the putative class members do not defeat certification." *In re Prudential Ins. Co. Sales Litig.*, 148 F.3d at 310. The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable

of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).  Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do."  *Id*. at 2556.

In this case, there is a single, determinative question at the heart of the litigation – whether the Products could, as promised in Rawlings' advertisements and on the Products' packaging, increase athletic performance, strength, balance and energy – is common to all class members, and all of the claims of the class members.  In addition, common questions exist as to whether Rawlings failed to disclose pertinent information about the Products, including its knowledge that the manufacturers had admitted that the product was not as described, and whether its conduct – both in its advertising and its failure to disclose – is unconscionable under the circumstances, and whether Plaintiffs have actionable claims. Commonality is, therefore, satisfied.

### 3.   *Typicality Under Rule 23(a)(3).*

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members.  FED. R. CIV. P. 23(a)(3). "If the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established." *Inmates of the Northumberland County*, No. 08-cv-345,

2009 U.S. Dist. LEXIS 126479, at *71 (M.D. Pa. Mar. 17, 2009) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001)).

Here, all of Plaintiffs' claims arise out of the same alleged conduct by the Defendants related to its advertising of the Products. Indeed, as noted above, the determinative, core question is whether the advertising for the Products was actually truthful and whether the claims on that advertising were even possible. Indeed, every single class member's claim rises and falls on that question. The typicality requirement is therefore met.

### 4.   *Adequacy of Representation Under Rule 23(a)(4).*

The final requirement of Rule 23(a) is that "the representative part[y] will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 U.S. Dist. LEXIS 119870, at *19 (W.D. Ky. Dec. 22, 2009) (quoting *Senter v. General Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)).

In addressing the adequacy of the proposed class representative(s), district courts examine whether he or she "has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Ritti v. U-Haul Int'l., Inc.*, 05-4182, 2006 U.S. Dist. LEXIS 23393, at *15 (E.D. Pa. Apr. 26, 2006). Here, all of the Class Representatives are adequate, in that they purchased the Products subject to the Settlement Agreement and claim that they were duped out of money based on the allegedly false and deceptive advertising utilized by Rawlings. They have also each actively participated in the discovery in this case by assisting with the drafting of pleadings and reviewing key documents, and have been in constant communication with their attorneys regarding the litigation.

With respect to the adequacy of proposed Class Counsel, they have invested considerable time and resources into the prosecution of this action. Proposed Class Counsel has a significant experience in litigating and resolving complex class action lawsuits, and was able to negotiate a fair and reasonable Settlement for the Class in this case. Proposed Class Counsel's experience is detailed in the accompanying Certification of Donald A. Beshada In Support of the Unopposed Motion for Preliminary Approval. Based upon the settlement and the experience of proposed Class Counsel, the adequacy requirement is, accordingly, met.

19

5.  ***The Requirements of Rule 23(b)(3) Are Met.***

Plaintiffs seek to certify the Settlement Class under Rule 23(b)(3), which has two components: predominance and superiority.  *See* FED. R. CIV. P. 23(b)(3).  "The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues.'"  *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig*., 2009 U.S. Dist. LEXIS 119870, at *25 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1084 (6th Cir. 1996)).  When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required.  *See Amchem*, 521 U.S. at 618 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

With respect to predominance, the Third Circuit has recently reiterated that the focus of the "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct."  *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 298 (3d Cir. 2011) (en banc).  "To determine whether common issues predominate over questions

affecting only individual members, the Court must look at each claim upon which the plaintiffs seek recovery … determine whether generalized evidence exists to prove the elements of the plaintiffs' claims on a simultaneous, class-wide basis, or whether proof will be overwhelmed by individual issues." *Dewey,* 728 F. Supp. 2d at 568.  With respect to superiority, the Court "considers whether or not a class action is a superior method of fairly and efficiently adjudicating the controversy." *Id.* at 569.  Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination.  These factors include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action.  *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).

Here, there are several common questions of law and fact that predominate over any questions that may affect individual Class Members.  For example, were this case to proceed, the primary issue would be whether Rawlings is liable to the Class under the claims pled in the Complaint based on the existence of advertising claims that are allegedly neither truthful nor substantiated with any real, legitimate science.  This is an issue subject to "generalized proof" (i.e., the advertising and the supposed support for it) and is a "question that is common to all class

members." *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 U.S. Dist. LEXIS 119870, at *26 ("the proof required [must focus] on Defendant's conduct, not on the conduct of individual class members."). *Accord, Sullivan*, 667 F.3d at 299. So too is the case here. Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

The second prong of Rule 23(b)(3) – that a class action be superior to other available methods for the fair and efficient adjudication of the controversy – is also readily satisfied. *See* FED. R. CIV. P. 23(b)(3). The SA provides members of the Settlement Class with the ability to obtain prompt, predictable, and certain relief, and contains well-defined administrative procedures to assure due process. This includes the right of any Class Members who are dissatisfied with the Settlement to object to it, or to exclude themselves. The Settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against Rawlings, by going forward with this case as a class action. And because the parties seek to resolve this case through a settlement, any manageability issues that could have arisen at trial are marginalized. *Sullivan*, 667 F.3d 273, 302-303 (3d Cir. 2011); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 269 (3d Cir. 2009).

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

### C.    The Court Should Approve the Notice Plan.

Under FED. R. CIV. P. 23(e), class members who would be bound by a settlement are entitled to reasonable notice of it before the settlement is ultimately approved by the Court.  *See* Fed. Jud. Ctr., *Manual for Complex Litig.* (3d ed. 1995) § 30.212.  And because Plaintiff here seeks certification of the Settlement Class under Rule 23(b)(3), "the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts."  *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig*., 2009 U.S. Dist. LEXIS 119870, at *42-43 (citing FED. R. CIV. P. 23(c)(2)(B)).  In order to satisfy these standards and "comport with the requirements of due process, [the] notice must be 'reasonably calculated to reach interested parties.'"  *Id.* at *43 (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)); *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1176 (8th Cir. 1995) ("Notice of a settlement proposal need only be as directed by the district court... and reasonable enough to satisfy due process." ).

The Notice Plan in this case is the best notice practicable under the circumstances to reach all Class Members.  It contains a mix of direct and publication notice, with the latter focused on presenting the notice in a publication – Baseball America – which is read by the actual class members (i.e., consumers who purchase baseball-related goods), and through social media, postings on the

Rawlings' websites that sell the Products, and a national press release.  Notice of the settlement will also be posted on a dedicated website created by the Administrator.  *See* SA at § V (1)(c).

Finally, the substance of the proposed Class Notice—which is attached as Exhibit C to the Settlement Agreement—will include all necessary legal requirements and provide a comprehensive explanation of the Settlement in simple, non-legalistic terms.  *See* FED. R. CIV. P. 23(c)(2)(B).  Accordingly, the Parties respectfully request that the Court approve the Notice Plan.

### D.    A Final Approval Hearing Should be Scheduled.

Finally, the Court should schedule a final fairness hearing to decide whether to grant final approval to the Settlement, address Class Counsel's request for attorneys' fees, expenses and an incentive award for the Class Representatives, and determine whether to dismiss this action with prejudice.  *See* Fed. Jud. Ctr., *Manual for Complex Litig.* § 30.44 (3d ed. 1995); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 600 (3d Cir. 2010).  Plaintiffs respectfully request that the final approval hearing be scheduled for 90 days (or shortly after 90 days) following the dates on which the appropriate state and federal officials are served with the notification required by the Class Action Fairness Act.[6]  *See* 28 U.S.C. § 1715(d).

---

[6] This notice will occur within ten days after the proposed SA is filed with the Court.  28 U.S.C. § 1715(b).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order: (1) conditionally certifying a class action with respect to the claims against Defendant pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) for the purpose of effectuating a class action settlement of the claims against the Defendant; (2) preliminarily approving the Settlement; (3) directing notice to class members consistent with the Notice Plan in the Settlement; and (4) scheduling a Final Approval Hearing.  A proposed order is submitted herewith as Exhibit C to the SA.


Dated: June 3, 2013


By:     *//s// Donald A. Beshada*
        Donald A. Beshada
        BESHADA FARNESE LLP
        108 Wanaque Avenue
        Pompton Lakes, NJ 07442
        Telephone: (973) 831-9910
        Facsimile: (973) 831-7371
        E-mail: dab@beshadafareselaw.com

        *Attorneys for Plaintiffs and the*
        *Proposed Class*