# BESHADA | FARNESE LLP

**NEW JERSEY**
108 WANAQUE AVE
POMPTON LAKES, NEW JERSEY 07442
T: 973-831-9910
F: 973-831-7371

**CALIFORNIA**
1999 AVENUE OF THE STARS, SUITE 1100
LOS ANGELES, CALIFORNIA 90067
T: 310-356-4668
F: 310-356-4601

WWW.BESHADAFARNESELAW.COM

**Please Reply To:**
Donald A. Beshada, Esq.
dbeshada@gmail.com
Tel: 973-831-9910

June 25, 2013

<u>Via Electronic Filing</u>
The Honorable Madeline Cox Arleo, United States Magistrate Judge
United States District Court, District of New Jersey
Martin Luther King Courthouse, Room 2060
50 Walnut Street
Newark, New Jersey 07102

   Re: Ian Steiner, et al. vs. Rawlings Sporting Goods Company, Inc.
     Civil Action No. 2:12-cv-2531 (MCA)

Dear Judge Arleo:

  As Your Honor is aware, we are counsel for Plaintiff Ian Steiner ("Plaintiff") in the above-referenced matter. Plaintiff's Motion for Preliminary Approval of a class action settlement (the "Settlement") is presently returnable before Your Honor on July 1, 2013. Please accept this letter in lieu of a more formal brief in response to the "objection" filed by non-party Stacey Orlick's attorneys – James Shah and Marc Godino (the "Attorney Objection")[1]. In a word, counsels' assumptions are incorrect and their arguments are wholly without merit. Indeed, it appears that the Attorney Objection has more to do with a personal vendetta that Mr. Godino has against Harold Hoffman, rather than a legitimate issue with the Settlement.[2]

---

[1]  For the record, both Harold Hoffman and myself contacted Mr. Godino and Jon Tostrud, Esq. (Mr. Godino's co-counsel in the Orlick matter) multiple times prior to agreeing to the Settlement in an attempt to vet the various litigation and settlement issues and to see if all counsel could work together to resolve the matter. Messrs. Godino and Tostrud, essentially, ignored those attempts and refused to even have a discussion with Mr. Hoffman and myself.

[2]  Accordingly, Steiner questions whether the Objection is being presented solely to unnecessarily multiply these proceedings, in violation of 29 U.S.C. 1927.

The Honorable Madeline Cox Arleo, USMJ
June 25, 2013
Page - 2 -

### Incorrect Assumptions and Misleading Statements

Counsels' Memorandum in support of the Attorney Objection contains a number of assumptions that simply are not correct, and a number of statements that are misleading. In particular:

1. At page 1 of the Attorney Objection, Counsel states that they seek to "inform the Court of certain aspects of the [Settlement] which [Counsel] fears the Court is likely not aware." Counsel's assumption is wrong. As set forth in Plaintiff's Motion for Preliminary Approval, each and every aspect of the Settlement was disclosed to and vetted by the Court at the March 19, 2013 settlement conference with Your Honor. Indeed, and as the Court is aware, Your Honor was intimately involved in each aspect and term of the Settlement and absolutely everything related to the Settlement was disclosed, vetted and recommended to Plaintiff and Rawlings Sporting Goods Company, Inc. ("Rawlings") by the Court during the settlement conference. As such, there is simply no basis for Counsel's purported "fear," and, accordingly, no true basis for the objection.

2. At page 1 of the Attorney Objection, Counsel states that there is "strong suggestions of collusion" amongst me and David Osterman, Esq., counsel for Rawlings. Again, and as Your Honor is aware, the Settlement was reached in a Court-supervised process, with the Court intimately involved in each and every aspect and term of the Settlement. Thus, unless the Court also colluded with Mr. Osterman and me – which, of course, it did not – there is simply no basis for Counsel's naked assertion.

3. At pages 1 and 2 of the Attorney Objection, Counsel states that, somehow, the Settlement "strongly suggests an inappropriate reverse auction" because, supposedly, the Settlement was reached after Rawlings' motion to dismiss the Orlick case was denied. Again, Counsel is simply wrong. Indeed, had Counsel bothered to check the docket sheet in this matter (as Mr. Godino did in providing a Westlaw printout of Harold Hoffman's cases), they would have discovered that the court-ordered settlement conference was scheduled before that motion was even decided, demonstrating, conclusively, that there was no "strange" timing issue surrounding

The Honorable Madeline Cox Arleo, USMJ
June 25, 2013
Page - 3 -

the conference.  Moreover, and as noted above, the Court was fully involved in the settlement process which, in and of itself, conclusively demonstrates the absence of the alleged "reverse auction."

      4.      On page 3 of the Attorney Objection, Counsel strongly suggests, if not outright states, that the first communications about settlement of the Orlick action occurred only after February 20, 2013.  Counsel, apparently, makes that statement in an attempt to bolster the "reverse auction" allegation.  However, Counsel's statement appears to be false, as according to the Declaration of David S. Osterman, filed on June 24, 2013 (the "Osterman Decl."), he and Mr. Godino discussed settlement in August 2012 and, at that time, Mr. Godino forwarded him an email and a settlement agreement/structure from another matter, noting that the numbers would have to be modified to reflect sales of the Rawlings product.  Certainly, the record reflects that Mr. Godino discussed resolution long before the time frame stated in the Attorney Objection.

      5.      At pages 3-4 of the Attorney Objection, Counsel cites a number of cases for the proposition that objections **at the Preliminary Approval stage** are appropriate and "helpful" to the Court.  That statement is misleading, as **none** of the cases address objections to preliminary approval, but rather address objections at **final approval**.  In fact, there is absolutely no case law that allows for objection at the preliminary approval stage, inasmuch as absent class members do not yet have standing to make any objections since the class has yet to be certified for settlement purposes.Orlick and her counsel simply have no standing at present.

      6.      At pages 5-7 of the Attorney Objection, Counsel claims that the settlement amount - $100,000 maximum – is "paltry" and that a proper settlement should, instead, mirror the settlement that Messrs. Godino and Tostrud in the *Phiten* matter, which Counsel represents as a "$3.2 million settlement."  Again, Counsel attempts to mislead the Court here.  While the *Phiten* settlement did, in fact, provide for $3.2 million, Counsel omits to advise the Court that $1.1 million of that amount was for attorneys' fees, and another significant, several hundred thousand dollar amount was reserved for notice and administration costs.  Aside from that, and as set forth in the Osterman Decl., Mr. Godino, himself, admitted that the *Phiten* settlement was a great deal

The Honorable Madeline Cox Arleo, USMJ
June 25, 2013
Page - 4 -

for the defendant in that case, a fact that is substantiated by the fact that *Phiten* sold over $100,000,000 of product to consumers.

7.     At pages 5-7 of the Attorney Objection, Counsel also claims that the Settlement should mirror the one reached in the *Power Balance Litigation*. Again, though, Counsel neglects to advise the Court of a significant fact – namely, that the settlement was never administered and consumers got little, if anything, from it!

### **The Instant Settlement Proportionally, Is Better Than the *Phiten* Settlement**

Counsel goes to great lengths to brag about their result in the *Phiten* matter, suggesting that the instant matter, proportionally, is "paltry" in comparison. That is not accurate. As set forth in the Osterman Decl., the instant settlement was actually mirrored after the *Phiten* settlement (to a degree), taking into account that *Phiten* had sales of over 30 times those of Rawlings, as per the **instructions of Mr. Godino, himself**.

Moreover, the *Phiten* settlement provided the settlement class with approximately 1% of sales ($3.2M less $1.1M in counsel fees less several hundred thousand dollars in notice and administration costs). Here, the class is actually receiving a minimum of 5% and a maximum of 10% of Rawlings' sales. As such, proportionally, the instant settlement is much better than the "great" *Phiten* settlement.

### **The Remaining Arguments Lack Merit**

Counsel's remaining arguments – that the Settlement was the product of collusion, that Rawlings engaged in a reverse auction, and that Harold Hoffman files a lot of class actions – are unavailing. Simply stated, and as set forth above, the Settlement was reached with the full participation and oversight of Your Honor. That fact, in and of itself, undermines Counsel's arguments and the Attorney Objection, in its entirety.

With respect to Mr. Hoffman, his prior litigation history is not relevant and has no impact on the fairness of the settlement. Indeed, given the lengths to which Mr. Godino has gone, it is

The Honorable Madeline Cox Arleo, USMJ
June 25, 2013
Page - 5 -

patently obvious that he simply has a personal issue with Mr. Hoffman, and is using the objection process as a subterfuge to "press" that personal issue.  In sum, a waste of the Court's and the Parties' time.

**Conclusion**

As set forth in Plaintiff's Motion for Preliminary Approval, the Settlement is fair, reasonale and adequate, and should be presented to the class for consideration.

Thank you.

                                                  Respectfully,

                                                  /s/ Donald A. Beshada

cc:      David S. Osterman, Esq.
           James Shah, Esq.
           (via electronic mail)